(C. D. 167)

STRAUSS IMPORT CORP. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided May 31, 1939)

*James W. Bevans* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of New York, in which the plaintiff protested against the action of the collector of customs in refusing to release for delivery a case of slide fasteners on the ground that the articles were not marked so as to indicate the country of origin thereof within the statutory requirements. The plaintiff claims in the protest that—

the slide fasteners contained in the said importation are marked in a conspicuous place, as legibly, indelibly, and permanently as the nature of the article will permit, in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article

and that the statute does not require—

that the name of the country of origin shall be so placed that it shall remain when the imported article is used in the United States in the manufacture of a new article, with a new name, character, and use.

Samples of the articles in the condition as imported were received in evidence and marked Exhibits 1 and 2. Each slide fastener consists of two parallel rows of metal teeth attached to one edge of each of two pieces of cotton tape. The two pieces of tape are held together at one end of the series of the teeth by a metal closure. A sliding unit having a metal tab attached thereto is locked into the metal teeth and so arranged that when the sliding unit is drawn in one direction the teeth attached to the two pieces of tape lock together, and when drawn in the opposite direction the teeth separate. One witness referred to the article as a "Zipper."

The only marking which appears on the imported articles is the word "Japan" in bold letters stamped or printed at the end of one of the pieces of tape on each article on the side opposite the metal tab, referred to in the testimony as "the back of the fastener." The tape upon which the marking appears extends about three-quarters of an inch beyond the metal closure at the end of the series of teeth and the word "Japan" covers more than half of this extension of the tape.

We have examined the invoice and find the following notation in red ink made by the appraiser with respect to the marking of the articles:

Slide Fasteners marked on tape "Japan." Should be marked with a paper tag "Slide Fasteners Made in Japan." Immediate container and case legally marked

The collector forwarded a memorandum with the protest to the court, reading as follows:

In accordance with Section 515 of the Tariff Act of 1930, our decision of December 28, 1938, excluding from delivery, one (1) case (Number 796), containing certain metal slide fasteners imported by Strauss Import Corp., under Warehouse Bond Entry No. 7723 of Sept. 23, 1938, has been reviewed.

Article 528 (e) of the Customs Regulations of 1937, as amended by T. D. 49658, requires that "Articles subject to marking to indicate the country of origin should be marked on an integral part in a reasonably conspicuous place where the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of the article before it reaches the ultimate purchaser." The Appraiser reported the fasteners were marked on the tape "Japan." This marking was on the lowest part of the tape and was not accepted as a satisfactory marking under Sect. 304 of the Tariff Act, as amended by the Customs Administrative Act of 1938, and Art. 528 (e) of the Customs Regulations of 1937, as amended by T. D. 49658.

Our decision is adhered to and the entry, invoice, warehouse withdrawal, and associated papers are transmitted for assignment and determination.

We find no other statement in the record regarding the method of marking required by the collector. During the course of the trial counsel for the parties entered into the following stipulation:

Mr. Bevans. Counsel stipulate that from April 7, 1936, to July 25, 1938, the date when the Administrative Act of 1938 became effective, that marking of country of origin on the tape slide fasteners as shown in Collective Exhibits 1 and 2 was accepted as a full compliance with the law, that is, with section 304.

Mr. Donohue. I will concede that such marking was accepted by the Government as being in compliance with the law, but I will not admit the relevancy of the concession to the present case, nor admit that the Government is bound by any of its previous acts.

Mr. Bevans. That is acceptable to me, that stipulation.

Mr. Lester Strauss, president of the importing firm, was called as a witness for the plaintiff. He testified that he had been importing slide fasteners like Collective Exhibit 1 for about eighteen months and that such fasteners had always been marked in the same manner as Exhibit 1 and that such marking had been accepted by the customs officers; that these slide fasteners are sold by his company to manufacturers of dresses, blouses, pocketbooks, gloves, and also to the retail trade; that the manufacturers to whom they are sold use them for the same purpose in the manufacture of garments as hooks and eyes or buttons; that the slide fasteners sold to retail stores are put on the various notion counters and sold to individual customers; that the word "Japan" remains on the slide fasteners sold to the retail stores; that he did not know of any use for the articles except in the manufacture of other things and when so used they were an essential part of the manufactured articles. On cross-examination he testified that about 75 per centum of his sales of slide fasteners were made to manufacturers and 25 per centum to the retail trade; that some concerns pack the articles in cellophane containers when sold to the retail

trade but his firm does not; that when slide fasteners are sewn into other articles like dresses or pocketbooks, the tape is covered by the cloth of the dress or the leather of the pocketbook, to within one-fourth or one-eighth of an inch from the outer edge of the tape.

The next witness called by plaintiff was Mr. A. W. Walter, who testified that he was vice president of J. M. Macdonald Import Co., an importer handling slide fasteners; that he dealt in articles like Exhibits 1 and 2 although his goods were marked on the front rather than on the back of the slide fasteners; that his company had been importing such articles since the Fall of 1935 and about 90 per centum of his sales of the goods were to manufacturers who made handbags, leather novelties, dresses, children's snow suits, tobacco pouches, and similar lines. The witness produced fifteen different manufactured articles in which slide fasteners were used. The samples were marked Illustrative Exhibits A to O, respectively. The witness produced also a sample of slide fasteners covered with cellophane in the condition in which it is sold to the retail trade, which sample was marked Illustrative Exhibit 3. The article itself is similar to Exhibits 1 and 2, except that the marking is on the front instead of the back and it is placed against a cardboard strip, inside of a cellophane wrapper, the word "Japan" being visible through the cellophane. The witness stated that the cardboard backing and the cellophane were placed on Illustrative Exhibit 3 in the United States after importation of the slide fastener.

The witness testified further that the imported articles are used as closures in the manufacture of other articles to take the place of buttons and buttonholes, hooks and eyes, and other forms of closing devices. On cross-examination he testified that recently his sales of slide fasteners have been exclusively to the manufacturers and that 90 per centum of all such articles are sold to manufacturers in the United States.

The defendant called Mr. Adolph G. Rogers, who is a customs agent in the service of the Government. He produced articles which he had purchased at retail in the United States, consisting of a purse, a dress, and a sweater, all containing slide fasteners as an integral part thereof. The articles were marked Illustrative Exhibits P, Q, and R. The witness produced also a slide fastener covered with cellophane and placed against cardboard, which was marked Illustrative Exhibit S.

It appears that, of all the illustrative exhibits, L is the only one in which the word "Japan" is visible on the tape of the slide fastener in the finished article. In some of the articles the slide fasteners have the word "Japan" marked by diesinking on the metal tab or on the back of the metal sliding unit, but in some others no marking is visible. Illustrative Exhibits D, E, and H bear the word "Japan"

in diesinking on the metal tab and also on the lining of the articles where it appears to have been inserted by the use of a rubber stamp. Witness Walter testified that those articles were completed in Japan. In none of the illustrative exhibits is there any marking visible, on the back of the tape of the slide fasteners, similar to that on Exhibits 1 and 2, but for all that appears in the record such marking may be on the tape in some of the exhibits but covered by other material.

Counsel for the plaintiff contends that the marking on Exhibits 1 and 2 is sufficient to comply with the requirements of the law and that the collector was not justified in refusing to deliver the goods without further marking.

An examination of the entry shows that the merchandise arrived in the United States on September 23, 1938, and was entered at the customhouse on October 4, 1938. The marking statute in force at the time of arrival and entry was section 304 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938. The pertinent parts of section 304 of the latter act read as follows:

SEC. 304. * * *

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser, and

(3) Authorize the exception of any article from the requirements of marking if * * *.

At the trial, counsel for the United States took the position that the marking on the slide fasteners herein involved should have been in accordance with section 304 (a) (2), that is, it should have contained other words or symbols in addition to the sole word "Japan" because the fasteners are intended to be combined with other materials in manufacturing articles therefrom in this country. The same position seems to have been taken by the appraiser for he states in his report in red ink on the invoice that the articles should be marked with the legend "Slide Fasteners Made in Japan."

The same contention was raised in the case of *Gibson-Thomsen Co., Inc.* v. *United States*, C. D. 117, wherein the marking of toothbrush

handles and wooden brush blocks was under consideration. The articles were marked with the word "Japan" in a position on the face of the toothbrush handles and brush blocks where the bristles were to be inserted. The court held that the statute does not require that such articles be marked in accordance with the provisions of section 304 (a) (2) and that the regulations did not so require. The customs regulations promulgated under the authority of section 304 (a) (2) are found in article 528 (h) of the Customs Regulations of 1937, as amended in T. D. 49658, reading as follows:

> When an imported article is of a kind which is usually combined with another article subsequent to importation but before delivery to an ultimate purchaser, the marking to indicate the country of origin shall include words or symbols which will clearly show that the origin indicated is that of the imported article only and not that of any other article with which the imported article may be combined subsequent to importation. For example, bottles or drums imported empty to be filled in the United States shall be marked with some other words, as "bottle (or drum) made in (*name of country*)." This regulation shall not apply to articles of a kind which are ordinarily so substantially changed in this country that the articles themselves become products of the United States.

An explanation of the above regulation was published in T. D. 49715, as follows:

> Article 528 (h) in its present form applies only when an imported article is of a kind which is usually combined with another article subsequent to importation, but before delivery to an ultimate purchaser in a manner which does not result in an article manufactured or produced in the United States. The phrase "combined with another article," as used in article 528 (h), refers to a combining of an imported article with another article without any process of manufacture or production and in such a manner that their separate identities are maintained and they do not become integral parts of an article manufactured or produced in the United States. Imported watch movements and toothbrush handles, for example, are not within the purview of the article, whereas bottles or other containers imported empty to be filled are within its purview.

The slide fasteners in this case are not combined with other articles in the sense of the statute and the regulations because they are used in manufacture which results in a new "article manufactured or produced in the United States," within the language of the regulation. Therefore they are not required to be marked with such a legend as "Slide Fasteners Made in Japan."

Counsel for defendant alleges further, in his brief, that the marking on the merchandise is not within the requirements of the statute because it may be covered or concealed in the manufacture of a new article and thus the ultimate purchaser in the United States will be unable to ascertain the country of origin thereof. Section 304 of the Tariff Act of 1922 contained a provision requiring that imported articles should be marked "in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements." The words "that shall not be covered or obscured by any subsequent

attachments or arrangements" were not reenacted in section 304 (a) of the Tariff Act of 1930 and we do not find language in section 304 (a) of the Customs Administrative Act of 1938 which would indicate that Congress intended to revive those requirements in the new law.

In the cases of *A. L. Randall Co.* v. *United States*, 48 Treas. Dec. 739, Abstract 50372, *Lagerdorf Trading Co.* v. *United States*, 48 Treas. Dec. 737, Abstract 50370, and *Fairfax Textile Mills, Inc.* v. *United States*, 48 Treas. Dec. 824, Abstract 50813, in construing the marking provisions of the Tariff Act of 1922, the court held that an imported material of a kind dedicated for use in the manufacture of other articles in this country should be sufficiently marked so as to indicate the country of origin conspicuously and indelibly and to remain until the character of the merchandise was changed after importation by subsequent operations and ceased to be itself the original article of commerce. Under the principle announced in those decisions, all that is required is that the marking on the slide fasteners in this case be sufficient to notify the user thereof—the manufacturer or individual who uses them—of the name of the country of origin. In *Gibson-Thomsen Co., Inc.* v. *United States, supra*, the court construed the words "ultimate purchaser in the United States" in section 304 (a) of the Customs Administrative Act of 1938 to mean "ultimate purchaser of the imported article." The court said:

> The regulations in article 528 (*e*) of the Customs Regulations of 1937, as amended in T. D. 49658, upon which the collector relies, relate to markings which may be defaced, destroyed, etc., "before it reaches the ultimate purchaser." Exhibits 1 and 2 are marked with the name of the country of origin sufficiently to inform the manufacturer who imported them, or any other manufacturer to whom they might be subsequently sold, of the origin thereof. As the manufacturer would be the "ultimate purchaser" of the imported article, it is manifest that the marking on the imported articles is not in conflict with the regulation.

The only remaining question for decision is the point raised by the defendant as to whether or not the articles are marked "as legibly, indelibly, and permanently as the nature of the article (or container) will permit," as provided in section 304 (a), inasmuch as they might have been marked on the metal portion by diesinking the name of the country of origin. A specimen of such a marking is found on the slide fasteners in Illustrative Exhibits A, B, C, D, E, G, M, etc.

In *Gibson-Thomsen Co., Inc.* v. *United States, supra*, it was held that it is unnecessary to mark a material used in manufacturing so conspicuously and permanently that the marking will appear on a finished article manufactured in the United States from that material. The court said:

> A manufacturer might make an article in the United States using materials imported from three or four different countries, and, if the defendant's contention should obtain, the manufacturer would be compelled to have each of the materials so marked that the name of the country of production thereof would appear on

the finished article. In such case an article manufactured in the United States would bear the marking legend of three or four countries. It is manifest that such confusion of markings could not have been intended.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

We are of opinion that the words "ultimate purchaser in the United States" used in the statute mean "ultimate purchaser of the imported article." An article loses its identity as soon as a new and different article is made therefrom and the ultimate purchaser of the new article is not the ultimate purchaser of the imported material within the tariff sense.

Whether a marking of a raw material must be so permanent that it will remain in a finished article made from that material is therefore not pertinent.

In the case of *American Express Co.* v. *United States*, C. D. 41, the court held that machines in which the marking showing the country of origin appeared on paper labels pasted to glass cylinders on the machines were not as permanently and indelibly marked as the nature of the articles would permit because they could have been marked by diesinking the name in the metal. In the opinion in that case the court pointed out that under the statute the nature of the particular article must be considered in determining the indelibility and permanency of the marking and that some articles are more susceptible of a permanent marking than others.

An examination of Exhibits 1 and 2 shows that a large proportion of the area of the articles consists of white cotton tape while the area of the metal capable of being marked is very small. The name of any country can be legibly, indelibly, and permanently marked on the cotton tape in letters of a sufficient size to be observed by any user but the metal portion is so small that only names of countries containing a few letters, such as "Japan," could be legibly marked on the metal. It would be impossible to place the name of Great Britain or Union of Soviet Socialist Republics on the metal portion, or any abbreviation of it permitted by the customs authorities, that would be legible. In most cases, therefore, it would be impossible to mark the name of the country of origin on the metal portion of slide fasteners to meet the terms of the statute requiring that articles be marked "as legibly, \* \* \* as the nature of the article \* \* \* will permit."

Counsel for the plaintiff calls attention to the stipulation in the record, quoted above, wherein it appears that during the period from April 7, 1936, to June 25, 1938, the date of enactment of the Customs Administrative Act of 1938, it had been the practice of the customs officers to pass slide fasteners as legally marked when they contained the same kind of marking as is found on Exhibits 1 and 2. Congress is presumed to be familiar with this customs practice, and counsel for the plaintiff draws attention to the fact that this revision of the marking statute was proposed by the Treasury Department and was

explained to the congressional committees by representatives of the Treasury Department. There is nothing in this new statute which would indicate an intent to require a more permanent marking than had formerly been required.

We find that the slide fasteners herein involved were marked "as legibly, indelibly, and permanently as the nature of the article * * * will permit," and we hold that the collector of customs erred in refusing to release the articles from customs custody, on the ground that they were not marked in accordance with the statutory requirements, upon payment of the regular duties thereon. The protest is sustained. Judgment will be entered in favor of the plaintiff.